**IN THE CIRCUIT COURT OF SAINT FRANCIS COUNTY, ARKANSAS**
**_____ DIVISION**

TYLER FOSTER

PLAINTIFF

v.                                                          NO. CV- 13-126-1

LUCKY ENTERPRISES EXPRESS INC.,
an Indiana corporation;                                      **FILED**
and KALMINDER GILL
                                                            SEP 05 2013
DEFENDANTS
                                                            TIME:_____M
                                                            BETTE S. GREEN, CLERK
                        **COMPLAINT**                       ST. FRANCIS COUNTY

         Comes now the Plaintiff, Tyler Foster, by and through his attorneys, and for his

causes of action against the Defendants herein alleges as follows:

                                    **PARTIES**

         1.      The Plaintiff, Tyler Foster, is a resident of the State of Tennessee, residing

at 2884 Sand Bar Road, Chuckey, Greene County, Tennessee, 37641. Tyler Foster's

claims and causes of action, as set out herein, arose from a collision on May 27, 2013,

in Saint Francis County, Arkansas, while Mr. Foster was a passenger in a 2012 Fret

Cascadia diesel tractor truck, VIN No. 1FUJGLDR2CLBC3268, owned by Covenant

Transport, Inc.

         2.      Defendant Lucky Enterprises Express Inc. is an Indiana corporation, with

its principal place of business located at 4114 Dougherty Lane, Greenwood, IN 46143.

Lucky Enterprises Express Inc., a general freight cargo carrier, is the owner of a 2007

Volvo diesel tractor truck, VIN No. 4V4NC9GH37N397606, with Indiana plate number

2038533, which on May 27, 2013, was hauling a trailer with Indiana plate number

Z78970, eastbound on Interstate 40 (I-40) near mile post 228, and was involved in the

1

collision with the Covenant Transport, Inc. truck in Saint Francis County, Arkansas. As a result of the collision, the Lucky Enterprises Express Inc. tractor trailer experienced a cargo loss/ shift.   Lucky Enterprises Express Inc. employed Defendant Kalminder Gill, who was operating the Lucky Enterprises Express Inc. tractor-trailer at the time of the collision.  Having no registered agent for service in the State of Arkansas, pursuant to Rule 4 of the Rules of Civil Procedure and Arkansas Code section 16-58-120, Lucky Enterprises Express Inc. may be served through its Principal, Harinder Kaur Gill, 4114 Dougherty Lane, Greenwood, IN  46143, or through the Arkansas Secretary of State.

3.      Defendant Kalminder Gill is a resident of the State of Indiana. On May 27, 2013, Defendant Kalminder Gill was operating the tractor owned by Lucky Enterprises Express Inc., which was involved in the aforementioned collision on May 27, 2013, in Saint Francis County, Arkansas.  Defendant Kalminder Gill may be served with process at his last known address of 4114 Dougherty Lane, Greenwood, IN  46143.

## JURISDICTION

4.      Plaintiff incorporates all of the allegations contained in Paragraphs 1 - 3.

5.      The negligent acts complained of in this Complaint occurred in Saint Francis County, approximately 5 miles west of Palestine, Arkansas.

6.      This Court has jurisdiction over the parties and the subject matter, and venue is appropriate in this Court.

## FACTS

7.      Plaintiff incorporates all of the allegations contained in Paragraphs 1 - 6.

8.      On May 27, 2013, at approximately 12:30 a.m., Defendant Kalminder Gill was operating the Lucky Enterprises Express Inc. tractor, which was pulling a trailer, westbound on Interstate 40 in the right lane about 5 miles west of Palestine, Arkansas.

2

At this location, I-40 West consists of two lanes of level asphalt divided from the eastbound lanes by a permanent barrier. The conditions were dark. The weather was clear and road conditions were dry.

9.    At the aforementioned place and time, the Lucky Enterprises Express Inc. tractor and trailer was slowed or stopped, straddling both the highway and the right shoulder. Defendant Gill had not engaged any warning signals, emergency lights, or any other signs to allow oncoming traffic to know of the truck slowing or stopping. In an attempt to avoid colliding with the Lucky Enterprises Express Inc. tractor-trailer, Defendant Justin Wiggins, who was driving the Covenant Transport, Inc. tractor-trailer, also westbound on I-40, swerved and collided with the left rear of the Lucky Enterprises Express Inc. tractor-trailer. Due to the violent impact of the collision, the Covenant Transport, Inc. tractor-trailer jackknifed and experienced a cargo loss/ shift. The Lucky Enterprises Express Inc. tractor-trailer also experienced a cargo loss/ shift.

10.    The impact of the collision was so great that Tyler Foster was thrown about the Covenant Transport, Inc. truck, causing him to endure incapacitating injuries. Mr. Foster was transported from the scene of the collision by ambulance to Regional Medical Center, Memphis, Tennessee.

11.    The violent impact Mr. Foster endured in the collision caused him to sustain a fracture of lumbar vertebra, closed, without spinal cord injury, a compression fracture dorsal spine (T12), neck injury, a back sprain, spasms that radiate to left hip and leg, as well as great physical pain and suffering. As a result of his injuries, Mr. Foster has been placed in a back brace from his neck to his waist and is unable to move about freely. Although he was physically active and in good health before the collision, the severe pain Tyler Foster continues to experience from his injuries has left

3

him unable to return to work and has impeded his ability to engage in the normal activities of life. Further, Tyler Foster has suffered severe anxiety and depression as a result of this collision.

Additionally, Tyler Foster's damages include disability, past and future emotional distress, past and future pain and suffering, past and future loss of capacity for the enjoyment of life, loss of earnings, loss of ability to earn money in the future, as well as past and future medical expenses. These damages are either permanent or continuing, and he will suffer additional injuries in the future.

12.     Upon information and belief, the full course and extent of the injuries of Plaintiff is of a continuing nature and remains unknown at this time. Plaintiff reserves the right to amend his pleadings as the full course and extent of Plaintiff's injuries become known.

### COUNT I

### NEGLIGENCE OF KALMINDER GILL
### AND VICARIOUS LIABILITY OF LUCKY ENTERPRISES EXPRESS INC.

13.     Plaintiff incorporates all of the allegations contained in Paragraphs 1 - 12.

14.     Defendant Gill was at all times relevant to this action an employee of Defendant Lucky Enterprises Express Inc. and was acting within the course and scope of his job duties. Defendant Gill had been issued a Commercial Driver's License from the State of Indiana.

15.     Defendant Gill failed to use the ordinary and reasonable care required under the circumstances. The separate and independent negligent conduct of Defendant Gill consists of, but is not limited to, the following acts and omissions:

> (a)     Failing to insure that the tractor-trailer was in safe operating
> condition prior to driving;

4

(b)     Failing to insure that the cargo in the tractor-trailer was properly loaded, distributed and adequately secured;

(c)     Failing to keep a careful lookout for other vehicles on the roadway, which a reasonably careful driver would keep under similar circumstances;

(d)     Failing to keep the tractor and trailer under the same level and degree of control maintained by a reasonably careful driver under similar circumstances;

(e)     Failing to use emergency flashers or give warning at any time prior to the crash sequence;

(f)     Failing to use a turn signal or flashers to signal to oncoming traffic that he was moving toward the shoulder; and

(g)     Failing to apply evasive or emergency maneuvers, and failing to employ flashing lights or other warning devices, after Defendant Gill knew, or by reasonable care should have known, that there was a reasonable likelihood that the tractor and trailer, if left sticking out in the interstate, would be stricken by traffic, causing damages.

16.     A reasonably careful person, operating a commercial motor vehicle under similar circumstances would foresee that the failures in duties of care listed above would result in devastating injuries to other persons traveling on the public roadway, like the Plaintiff.

17.     All of the injuries and damages complained of herein were foreseeable and proximately resulted from the negligence of Defendant Gill.

18.     The above alleged negligent acts were not in compliance with the training that Defendant Gill should have received in order to obtain his Commercial Driver's License from the State of Indiana, including the CDL Manual issued to him.

19.    At the time of the collision described above, Defendant Gill had a duty to follow the common law rules of the road and violated certain of those rules of the road, including but not limited to:

    (a)    Failing to keep a lookout for other vehicles on the roadway, which a reasonably careful driver would keep under similar circumstances;

    (b)    Failing to inspect the tractor-trailer he was assigned to ensure it was in safe driving condition prior to operation;

    (c)    Failing to inspect cargo to insure it was properly loaded, distributed and adequately secured;

    (d)    Failing to keep the tractor and trailer under the same level and degree of control maintained by a reasonably careful driver under similar circumstances; and

    (e)    In circumstances as described above, when the driver sees danger, when danger would be reasonably apparent to the driver who is keeping a proper lookout, or when the driver is warned of approaching imminent danger, failing to use ordinary care to maintain the tractor and trailer under such control as to be able to stop off of the highway, if necessary, to avoid damage to himself or others.

20.    Defendant Gill's failure to meet the standard of conduct required by the aforementioned common law rules of the road was negligent.

21.    All of the injuries and damages complained of herein proximately resulted from the negligent failures of Defendant Gill to follow the rules of the road.

22.    The Federal Motor Carrier Safety Regulations (hereinafter, "FMCSR") are mandatory laws for all motor carriers operating in interstate commerce.  The purpose of the FMCSR is to ensure that all motor carriers and operators of commercial motor vehicles maintain adequate basic safety management controls in their operations.

23.    At all relevant time periods, Defendant Gill was a driver or operator of a "commercial motor vehicle" as defined by 49 C.F.R. parts 382 *et seq.* of the FMCSR.

The federal regulations imposed certain mandatory duties and prohibitions upon Defendant Gill to ensure that, in driving a commercial motor vehicle, he conducted himself in a manner that protected public health, safety and welfare.

24.     Defendant Gill violated several Federal Motor Carrier Safety Regulations, including but not limited to:

(a)     Violation of § 392.2 in failing to operate a commercial motor vehicle in accordance with the laws, ordinances, and regulations of the State of Arkansas;

(b)     Violation of § 392.3 mandating that no driver shall operate a motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him to begin or continue to operate a commercial motor vehicle;

(c)     Violation of § 392.7 requiring that no commercial motor vehicle shall be driven unless the driver is satisfied that certain parts and accessories are in good working order, including brakes, steering mechanism, tires, and coupling devices; nor shall any driver fail to use or make use of such parts and accessories when and as needed;

(d)     Violation of § 392.9(a) prohibiting a driver from operating a commercial motor vehicle unless the commercial motor vehicle's cargo is properly distributed and adequately secured;

(e)     Violation of § 392.9(b) requiring the driver to (1) assure himself that the vehicle's cargo is properly distributed and adequately secured before he drives that commercial motor vehicle; (2) inspect the cargo and the devices used to secure the cargo within the first 50 miles after beginning a trip and cause any adjustments to be made to the cargo or load securement devices as necessary, including adding more securement devices, to ensure that cargo cannot shift on or within, or fall from the commercial motor vehicle; and (3) reexamine the commercial motor vehicle's cargo and its load securement devices during the course of transportation;

(f)     Violation of § 392.14 in failing to exercise extreme caution when hazardous conditions exist;

(g)     Violation of § 393.100 mandating that cargo must be contained, immobilized or secured in accordance with applicable regulations to prevent shifting upon or within the vehicle to such an extent that the vehicle's stability or maneuverability is adversely affected;

(h)     Violation of § 393.106 requiring that all cargo must be firmly immobilized or secured on or within a vehicle by structures of adequate strength, dunnage or dunnage bags, shoring bars, tie downs or a combination of these;

(i)     Violation of § 396.7 in failing to operate a motor vehicle in such a condition as to likely cause an accident or a breakdown of the vehicle; and

(j)     Violation of § 396.13 mandating before driving a motor vehicle that a driver shall be satisfied that the motor vehicle is in safe operating condition.

25.    Defendant Gill further violated the FMCSR's standards requiring commercial motor vehicle operators to have knowledge and skills with regard to safe vehicle control. Defendant Gill violated 49 C.F.R. § 383.111(c) in the following manner:

(a)     In failing to know the proper procedures for performing various basic maneuvers;

(b)     In failing to recognize the importance of proper visual search and proper visual search methods;

(c)     In failing to recognize the importance of understanding the effects of speed;

(d)     In failing to follow the procedures and techniques for controlling the space around the vehicle;

(e)     In failing to know basic information on hazard perception and clues for recognition of hazards; and

(f)     In failing to know basic information concerning when and how to make emergency maneuvers.

26.    Additionally, Defendant Gill violated the Federal Motor Carrier Safety Regulations, including:

(a)   Violation of § 395.3 defining maximum driving and on-duty times, and providing for the accurate logging and record-keeping relating to such driving and on-duty-times;

(b)   Violation of § 395.8(a) requiring every driver used by the motor carrier to record his/her duty status for each 24 hour period;

(c)   Violation of §392.80 in engaging in texting while driving; and

(d)   Violation of §383.51 in operating a commercial motor vehicle despite being disqualified to do so for violation of state laws prohibiting texting while driving.

27.   The FMCSR, including those sections cited above, are adopted and enforced by the State of Arkansas as standards and law of this State, pursuant to the Arkansas Uniform Commercial Driver License Act, Arkansas Code sections 27-23-101 *et seq.*, and the Arkansas State Highway Commission Regulations, Minute Order Revisions, Commercial Motor Carriers, Rule 17.1.

28.   Defendant Gill also violated laws and regulations enacted in the State of Arkansas governing the operation of motor vehicles on the roads and highways of this State, including but not limited to:

(a)   Violation of Arkansas Code section 27-23-130 providing that a driver of a commercial motor vehicle shall not engage in texting while driving;

(b)   Violation of Arkansas Code section 27-51-104(a) providing it is unlawful for any person to drive or operate any vehicle in such a careless manner as to evidence a failure to keep a proper lookout for other traffic, vehicular or otherwise, or in such a manner as to evidence a failure to maintain proper control on the public thoroughfares in the State of Arkansas;

(c)   Violation of Arkansas Code section 27-51-104(b) providing it shall be unlawful for any person to operate or drive any vehicle on the public thoroughfares or private property in the State of Arkansas in violation of the following prohibited acts:

(1)     To operate any vehicle in such a manner which would cause a failure to maintain control; and

(2)     To operate a vehicle in any manner, when the driver is inattentive, and such inattention is not reasonable and prudent in maintaining vehicular control;

(d)     Violation of Arkansas Code section 27-51-201(a)(2) mandating that in every event, speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care; and

(e)     Violation of Arkansas Code section 27-50-308 providing that any person who drives any vehicle in such a manner as to indicate a wanton disregard for the safety of persons or property is guilty of reckless driving.

29.     Prior to and/or at the time of the collision on May 27, 2013, Defendant Gill violated each of the above-cited safety laws and regulations, which violations are negligence *per se*.

30.     Defendant's violations of the above-cited statutes and regulations were a direct and proximate cause of the injuries and damages alleged herein.

31.     The personal injuries incurred by Plaintiff are the type of injuries the above-cited safety laws and regulations were designed to prevent.

32.     The above-described conduct by Defendant Kalminder S. Gill was willful, wanton, reckless, malicious and/or intentional.

33.     Prior to and at the time of the May 27, 2013, collision, when Defendant Gill was operating the Lucky Enterprises Express Inc. tractor and caused the collision by failing to fully exit the roadway, he knew, or in the exercise of ordinary care should have known in light of the surrounding circumstances, that the above-described conduct

10

would naturally and probably result in injury to others, yet he continued the conduct in reckless disregard of the consequences.

34.    As a direct and proximate result of Defendant Gill's acts and omissions, while acting within the scope of his employment for Defendant Lucky Enterprises Express Inc., Plaintiff asserts claims for all compensatory and punitive damages against Defendants Gill and Lucky Enterprises Express Inc., including, but not limited to, the physical injuries described herein, pain and suffering, mental anguish, disfigurement, loss of income, loss of services and contributions, loss of personal property, and medical expenses, including any such damages reasonably certain to be incurred in the future, in an amount to be determined by the jury, plus the costs of this litigation, and all of the relief to which Plaintiff is entitled to by law, all in an amount in excess of that necessary for federal diversity jurisdiction.

35.    On May 27, 2013, and at all times relevant to this action, Defendant Gill was acting within the course and scope of his employment for Lucky Enterprises Express Inc.  Lucky Enterprises Express Inc. had the authority, right and duty to control how Defendant Gill performed his job.  Lucky Enterprises Express Inc. is vicariously liable for the compensatory damages sought by Plaintiff for the negligence of Defendant Gill, as well as punitive damages for his conduct.

## COUNT II

### NEGLIGENCE OF LUCKY ENTERPRISES EXPRESS INC.

36.    Plaintiff incorporates all of the allegations contained in Paragraphs 1-35.

37.    In addition to vicarious liability for the negligent conduct, injuries and damages caused by Defendant Gill, Defendant Lucky Enterprises Express Inc. is also

directly and independently liable for injuries and damages proximately caused by its own negligent acts and omissions.

38.    Defendant Lucky Enterprises Express Inc., by and through its officers, servants, employees and/or agents, whether actual or ostensible, breached duties of care and committed the following acts of negligence and carelessness by failing to meet the requisite standards of due care, skill and practice as required of commercial and freight delivery trucking companies and/or the owners of tractor-trailers.

39.    At the time of the collision, Defendant Gill was operating a tractor-trailer owned by Lucky Enterprises Express Inc.  Lucky Enterprises Express Inc. had a duty to inspect, repair, maintain and supply a tractor and trailer with the brakes, steering, tires, couplings and other mechanisms for safe operation in good repair.

40.    As a motor carrier, Lucky Enterprises Express Inc., and as owner, was fully responsible for the inspection, maintenance and operation of the tractor-trailer, which was in a state of repair that contributed to the collision.

41.    Lucky Enterprises Express Inc. failed to properly repair and maintain the tractor-trailer to assure its safe operation.

42.    Lucky Enterprises Express Inc. failed to properly inspect the tractor-trailer prior to each trip to assure its safe operation.

43.    Defendant Lucky Enterprises Express Inc. was negligent in training, retaining and supervising its employees, including Defendant Gill, to wit:

    (a)    Lucky Enterprises Express Inc. knew or should have known that Defendant Gill was not competent, satisfactory or safety-conscious to operate the tractor-trailer he was employed to drive;

12

(b)   Lucky Enterprises Express Inc. misjudged and/or overestimated the skills and ability of Defendant Gill to drive its vehicles;

(c)   Defendant Lucky Enterprises Express Inc. failed to train educate, direct, prepare, set policy, or give guidance to its employees and drivers, such as Defendant Gill, in the use of its vehicles;

(d)   Defendant Lucky Enterprises Express Inc. failed to train, educate, direct, prepare, set policy, or give guidance to its employees and drivers, such as Defendant Gill, as to prohibitions against texting while driving, and what to do in situations of driver fatigue, reduced alertness or illness;

(e)   Lucky Enterprises Express Inc. failed to train, educate, direct, prepare, set policy, or give guidance to its employees such as Defendant Gill in the use of its vehicles, particularly in the area of safety;

(f)   Lucky Enterprises Express Inc. failed to train, educate, direct, prepare, set policy, or give guidance to its employees such as Defendant Gill in stopping distances for the tractor-trailer he was operating;

(g)   Without the aforementioned training, education, direction, preparation, policies and/or guidance provided to its employees, Lucky Enterprises Express Inc. knew or should have known its employees such as Defendant Gill were not qualified or competent to operate commercial motor vehicles;

(h)   Lucky Enterprises Express Inc. permitted Defendant Gill to operate its commercial motor vehicle on May 27, 2013, when he was unqualified and inadequately trained to do so; and

(i)   Lucky Enterprises Express Inc. failed to supervise Defendant Gill in the operation of its commercial motor vehicle prior to and on May 27, 2013, in order to prevent the negligent conduct alleged herein.

44.   The negligence of Lucky Enterprises Express Inc. in training, retaining and supervising Defendant Gill was a proximate cause of the injuries and damages alleged herein.

45.     A reasonably careful motor carrier, operating under similar circumstances, would foresee that the failures in duties of care listed above would result in devastating injuries to other persons traveling on public highways.

46.     At all relevant time periods, Lucky Enterprises Express Inc. was a "motor carrier" and an "employer" of drivers of "commercial motor vehicles" as defined by 49 C.F.R. parts 390 *et seq.* of the FMCSR.  Defendant Lucky Enterprises Express Inc. was subject to the mandatory requirements and prohibitions set out therein, including duties imposed to ensure that its commercial motor vehicle drivers acted in compliance with these federal regulations.

47.     Observance of duties placed on motor carriers by the FMCSR includes a mandate that an employer train and supervise employees to ensure that its drivers operate commercial motor vehicles in a safe manner and only at times that the driver's ability or alertness is not impaired through fatigue, illness, or any other cause.

48.     Pursuant to FMCSR, parts 390.03(e)(1), 390.11, every employer of a commercial vehicle driver shall be knowledgeable of and comply with all regulations applicable to that motor carrier's operations, and it shall be the duty of the motor carrier to require observance of any duty prescribed for a driver or any prohibition imposed upon the driver.

49.     Pursuant to FMCSR, part 392.1, every motor carrier, its officers, agents, representatives, and employees responsible for the management, maintenance, operation, or driving of commercial motor vehicles, or the hiring, supervising, training, assigning, or dispatching of drivers, shall be instructed in and comply with the FMCSR.

50.     Defendant Lucky Enterprises Express Inc. violated other provisions of the FMCSR, including but not limited to:

14

(a)   Violation of § 383.111 in failing to train its drivers in procedures for safe vehicle control, the proper procedures for performing various basic maneuvers; the importance of proper visual search and proper visual search methods; the importance of understanding the effects of speed control; basic information on hazard perception and clues for recognition of hazards; and basic information concerning when and how to make emergency maneuvers;

(b)   Violation of § 391.11 and § 391.15(a) in permitting a person to drive a commercial motor vehicle that is not qualified to drive a commercial motor vehicle;

(c)   Violation of § 392.2 in failing to operate its commercial motor vehicle in accordance with the laws, ordinances, and regulations of the State of Arkansas;

(d)   Violation of § 392.3 in requiring or permitting a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him to begin or continue to operate a commercial motor vehicle;

(e)   Violation of § 392.6 prohibiting a motor carrier from scheduling a run or permitting or requiring the operation of any commercial motor vehicle between points in such period of time as would necessitate the commercial vehicle being operated at speeds greater than those prescribed by the jurisdictions in or through which the commercial motor vehicle is being operated;

(f)   Violation of § 396.7 mandating that a motor vehicle shall not be operated in such a condition as to likely cause an accident or a breakdown of the vehicle;

(g)   Violation of § 392.9(a) mandating that a motor carrier may not require or permit a driver to operate a commercial motor vehicle unless the commercial motor vehicle's cargo is properly distributed and adequately secured;

(h)   Violation of § 393.100 mandating that cargo must be contained, immobilized or secured in accordance with applicable regulations to prevent shifting upon or within the vehicle to such an extent that the vehicle's stability or maneuverability is adversely affected;

(i)    Violation of § 393.106 requiring that all cargo must be firmly immobilized or secured on or within a vehicle by structures of adequate strength, dunnage or dunnage bags, shoring bars, tie downs or a combination of these;

(j)    Violation of § 395.3 defining maximum driving and on-duty times for drivers, and mandating accurate logging and record-keeping relating to such driving and on-duty-times;

(k)    Violation of § 396.3 requiring a motor carriers to systematically inspect, repair and maintain vehicles subject to its control;

(l)    Violation of § 396.11(a) requiring every motor carrier shall require its drivers to report, and every driver shall prepare a report in writing at the completion of each day's work on each vehicle operated;

(m)    Violation of § 396.11(c) requiring, prior to requiring or permitting a driver to operate a vehicle, every motor carrier or its agent shall repair any defect or deficiency listed on the driver vehicle inspection report which would be likely to affect the safety of operation of the vehicle; and

(n)    Violation of § 396.13 mandating before driving a motor vehicle that a driver shall be satisfied that the motor vehicle is in safe operating condition.

51.    The FMCSR, including those sections cited above, are adopted and enforced by the State of Arkansas as standards and laws of this State, pursuant to the Arkansas Uniform Commercial Driver License Act, Arkansas Code sections 27-23-101 *et seq.*, and the Arkansas State Highway Commission Regulations, Minute Order Revisions, Commercial Motor Carriers, Rule 17.1.

52.    Prior to and/or at the time of the May 27, 2013 collision, Lucky Enterprises Express Inc. violated each of the above-cited safety laws and regulations. These violations of the FMSCR are negligence per se.

53.   Lucky Enterprises Express Inc.'s violations of the above-cited statutes and regulations were a direct and proximate cause of the injuries and damages alleged herein.

54.   The injuries incurred by Tyler Foster are the type of injuries the above-cited safety law and regulations were designed to prevent.

55.   Lucky Enterprises Express Inc. entrusted the operation of the tractor-trailer to Defendant Gill, who it knew, or should have known, was without the proper training, experience and ability to safely operate a commercial motor vehicle, in a manner that created a foreseeable, appreciable and unreasonable risk of harm to third-parties, namely persons traveling on public roads and highways.

56.   All of the injuries and damages complained of herein were foreseeable and proximately resulted from the negligence of Lucky Enterprises Express Inc.

57.   The above-described conduct by Lucky Enterprises Express Inc. was willful, wanton, reckless, malicious and/or intentional.

58.   In addition to punitive damages based upon its vicarious liability for the conduct of Defendant Gill, Lucky Enterprises Express Inc. also is liable for punitive damages for its own conduct. Lucky Enterprises Express Inc. knew, or in the exercise of ordinary care should have known in light of the surrounding circumstances, that the above-described negligent conduct on its part would naturally and probably result in injury to others, yet it continued such conduct in due to the reckless disregard of the consequences. Thus, punitive damages should be imposed against Lucky Enterprises Express Inc. due to its own conduct as set out above.

59.   As a direct and proximate result of the negligent acts and omissions of Lucky Enterprises Express Inc., the Plaintiff asserts claims for all compensatory and

17

punitive damages, including, but not limited to, the physical injuries described herein, resulting in Tyler Foster's injuries, pain and suffering, mental anguish, disfigurement, loss of income, loss of services and contributions, medical expenses, and loss of personal property, including any such damages reasonably certain to be incurred in the future, in an amount to be determined by the jury, plus the costs of this litigation, and all of the relief to which the Plaintiff is entitled to by law, all in an amount in excess of that necessary for federal diversity jurisdiction.

## DEMAND FOR JURY TRIAL

60.     Plaintiff demands that all issues of fact in this case be tried to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.     For damages in an amount adequate to compensate Plaintiff for the injuries and damages sustained.

2.     For all general and special damages caused by the alleged conduct of Defendants.

3.     For punitive damages sufficient to punish the Defendants for their tortious conduct and to deter similar conduct on the part of the Defendants or any others who may engage in similar conduct.

4.     For the costs of litigating this case.

5.     For all other relief to which Plaintiff is entitled by Arkansas law.

Respectfully submitted by:

TRAMMELL PIAZZA LAW FIRM, PLLC

18

M. Chad Trammell- AR – 95125
Melody H. Piazza- AR - 86108
418 North State Line Avenue
Texarkana, Arkansas 71854
Telephone: 870.779.1860
Facsimile: 870.779.1861

and

LAW OFFICES OF TONY SEATON, PLLC
Tony Seaton, *pro hac pending*
Robert Bates, *pro hac pending*
118 E Watauga Ave
Johnson City, TN 37601
(423) 282-1041

*Attorneys for Plaintiff*